# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT L. ANGELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV2220MLM |
| ) | |
| JOHN HANCOCK LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court pursuant to the Motion to Dismiss filed by Defendant John Hancock Life Insurance Company ("Defendant"). Doc. 6. Plaintiff Robert L. Angell ("Plaintiff") has filed a Response. Doc. 8. Defendant has filed a Reply. Doc. 10. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Doc. 11.

## BACKGROUND

Plaintiff alleges in his Complaint that he began a continuous period of employment as a machinist for Trans World Airlines ("TWA") in April 1952; that since the date of its inception in 1969 he was a participant in the Retirement Plan for Machinists of TWA ("Machinist Plan"); that he was married to Lenna Angell in 1959; that on March 28, 1977, he ended his period of employment with TWA as a member of a labor union and ceased earning benefits under the Machinist Plan; that he earned a lifetime monthly benefit of $656.00 upon retirement through the Machinist Plan; that on March 28, 1977, he began a continuous period of employment with TWA as a non-union member and as part of that employment was a participant in the Retirement Plan for Non-Contract Employees ("Non-Contract Plan"); that his marriage to Lenna Angell was dissolved by a Missouri court on

March 1, 1983; that the State court ordered an "equitable distribution of all the pension and retirement rights which accrued on account of Plaintiff's employment during the marriage; and that on March 25, 1983, the State court issued an amended decree which did not change the division of Plaintiff's pension. Plaintiff further alleged that the State court specifically ordered on March 1, 1983, that Lenna Angell's share "shall be calculated by multiplying all pension benefits by 50% and then multiplying the product by a fraction whose numerator is 23.58 (the number of years of the marriage), and whose denominator is the number of years of [Plaintiff's] employment with [TWA]." Plaintiff also alleges that after his divorce he continued to earn benefits under the Non-Contract Plan; that in February 1989 he ended his period of employment with TWA; that he earned a lifetime monthly benefit of $801.00 upon retirement through his participation in the Non-Contract Plan; that when he retired in February 1989 he became eligible to receive monthly benefits from both the Machinist Plan and the Non-Contract Plan (together referred to as the "Plans"); that, upon Plaintiff's retirement in February 1989 and until March 1990, pursuant to a group annuity contract and funding agreement between Defendant and TWA, Defendant provided Plaintiff a monthly total annuity of $1,457.99; and that Defendant did not give any of Plaintiff's pension to Lenna Angell during this period. Plaintiff alleges that, according to each of the Plans, benefits may not be assigned except by the direction of a qualified domestic relations order ("QDRO").

Plaintiff further alleges that on April 17, 1990, the State court issued an Order and Judgment of Contempt finding that Plaintiff was in civil contempt for not paying Lenna Angell her equitable share of Defendant's pension; finding that the amended decree of March 25, 1983 was a QDRO; ordering Defendant to pay Lenna Angell $8,898.14, plus $1,000 to her attorney and court costs; and holding that Lenna Angell had an equitable interest of 31.86% in Plaintiff's pension based on Plaintiff's 37 years of employment and the length of the marriage. Plaintiff also alleges that on May

2

2, 1990, Defendant received a copy of the State court's April 1990 Order and Judgment of Cotempt from TWA; that Defendant never attempted to acquire a copy of the State court's Order of March 25, 1983; that, at TWA's request, Defendant set aside 31.86% of Plaintiff's pension benefits in both the Machinist and Non-Contract Plans, a monthly total of $464.51; that on October 16, 1991, Defendant received correspondence from TWA stating that "TWA qualified the Domestic Relations Order," and requesting that Defendant release the escrowed money to Lenna Angell and continue to pay her each month; that Defendant sent the escrowed money to Lenna Angell; and that beginning November 1, 1991, and continuing to the present Defendant has sent, each month, $464.51 of Plaintiff's pension to Lenna Angell.

Plaintiff has attached to his Response to Defendant's Motion to Dismiss a letter, dated July 19, 2005, from Defendant to Plaintiff's attorney, in which letter Defendant addressed an inquiry for information regarding Plaintiff's retirement benefit under a Group Annuity Contract with TWA. This letter states that TWA was responsible as Plan Sponsor to determine eligibility and amounts payable to plan participants and that this "responsibility included interpretation and approval of any Qualified Domestic Relations Orders. Upon receiving the appropriate payment directives from TWA, [Defendant] would then initiate payments to the participants or their alternate payees." This letter further states that TWA gave its approval and authorization for Defendant to adjust Plaintiff's benefit and make payment to his former spouse and that Defendant followed these instructions.

Plaintiff also submitted a letter dated August 25, 2005, from Defendant to Plaintiff's attorney which states that the terms of the group annuity contract issued by Defendant did not create a fiduciary relationship between Defendant and the employee benefit program. The letter further states that Defendant "provides no ancillary services in connection with the referenced Plan which would create a fiduciary relationship." This letter also states that Defendant "looks to the Employer or the

Employer's designated Plan administrator with regard to such matters as the interpretation and approval of a Qualified Domestic Relations order."

By engaging in the conduct described in his Complaint, including sending the escrowed money and $464.51 each month to Lenna Angell, Plaintiff alleges, in Count I, that Defendant breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1)(D). In Count II Plaintiff alleges that Defendant breached its co-fiduciary duty under ERISA, 29 U.S.C. § 1105 by complying with TWA's requests to release the escrowed money to Lenna Angell and to pay her monthly payments of $461.51. In Count III Plaintiff alleges pursuant to ERISA, 29 U.S.C. §1132(a)(1)(b), that Defendant owes Plaintiff $86,398.86 for benefits wrongfully assigned and alienated. Plaintiff filed his Complaint in the matter under consideration on November 22, 2005.

In its Motion to Dismiss Defendant contends that each of Plaintiff's claims is time-barred under the applicable statute of limitations and that, therefore, Plaintiff's Complaint fails to state a claim as a matter of law. In particular, Defendant contends that Counts I and II are time-barred pursuant to 29 U.S.C. § 1113 and that Count III is time-barred pursuant to Missouri law.

## LEGAL STANDARD FOR A MOTION TO DISMISS

A court may dismiss a cause of action for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993). "The issue is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [its]claim." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). See also Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir. 1982) (a complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations). The court

must review the complaint most favorably to the plaintiff and take all well-pleaded allegations as true to determine whether the plaintiff is entitled to relief. Conley, 355 U.S. at 45-46. A dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff has presented allegations that show on the face of the complaint that there is some insuperable bar to relief. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

## DISCUSSION

**I.    Counts I and II:**

ERISA, 29 U.S.C. § 1113, Limitation of Actions, provides as follows:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after **the earlier of**--

> **(1) six years** after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2) three years** after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

(emphasis added).[1]

The parties agree that § 1113 is applicable to Counts I and II in the matter under consideration. They disagree, however, regarding the date upon which Plaintiff had actual knowledge of Defendant's alleged breach of fiduciary duty. Plaintiff takes the position that he did not have knowledge until 2005 of Defendant's status as fiduciary and of Defendant's breach of fiduciary duty.

---

[1] An earlier version of this statute included a subsection (a) designation. This designation was struck by amendment in 1989. See 29 U.S.C. § 1113, Historical and Statutory Notes. As such, case law which precedes this amendment references subsection (a).

5

Plaintiff further contends that the repudiation which is necessary for a cause of action for breach of fiduciary duty under ERISA to occur took place no earlier than August 2005. Defendant contends that Plaintiff had actual knowledge of its fiduciary status and of its alleged breach in 1991 and that Plaintiff's cause of action arose in 1991. Defendant further contends that the three year statutory provision of §1113(2) applies to Plaintiff's claim for a breach of fiduciary duty in Counts I and II because Plaintiff had actual knowledge of the alleged breach in 1991. Alternatively, Defendant contends that applying the 6-year period of § 1113(1) Plaintiff's claims are, likewise, time-barred.

For purposes of Defendant's Motion to Dismiss, the court will assume, arguendo, that Defendant is a fiduciary as intended by § 1113.[2] As quoted above, § 1113 establishes the statute of limitations applicable to fiduciary duty claims pursuant to ERISA and provides that claims are time-barred *no later than six years from the date of the breach*.[3] Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 859 (8th Cir. 1999) ("ERISA contains an express statute of limitations that bars breach of fiduciary duty claims after the earlier of six years from the breach or three years from the date that plaintiff acquires actual knowledge of the breach."). As such, the court must consider which provision of § 1113 is applicable in the matter under consideration.

**A.     Application of the 3-Year Provision of § 1113(2)**:

---

[2]     Defendant accepts Plaintiff's allegation that it is a fiduciary under ERISA only for purposes of the Motion to Dismiss. Doc. 7 n.1.

[3]     In instances involving concealment or fraud § 1113 does not protect by applying a maximum of a six year limitation period. 29 U.S.C. § 1113 (last clause). Neither concealment nor fraud are alleged in the matter under consideration.

Courts apply a stricter standard for application of the 3-year statute of limitations provision of § 1113(2) as opposed to the 6-year limitation period § 1113(1). Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir.1992). For the 3-year statute of limitations of § 1113(2) to apply to a cause of action a plaintiff must have "'*actual knowledge* of *all material facts* necessary to understand that some claim exists.'" Brown, 190 F.3d at 858 (quoting Gluck, 960 F.2d at 1177) (emphasis added). "[A]ctual knowledge of all material facts constituting a breach of fiduciary duty or violation of ERISA is the *sine qua non* for application of" § 1113's 3-year limitation period. Gluck, 960 F.2d at 1177. The 3-year statute, however, is not triggered by knowledge of the applicable law; it is triggered by knowledge of the relevant facts. Id. at 1177-78.

In order to determine when Plaintiff acquired knowledge as required by § 1131(2), the court must consider the elements of the allegations of the breach of fiduciary duty alleged in Plaintiff's Complaint. Plaintiff alleges that Defendant breached its fiduciary duty under §1104(a)(1)(A), (B), and (D) by sending the escrowed amount to Lenna Angell and by sending the sum of $464.51 to Lenna Angell each month. Section 1104(a)(1) establishes a prudent man standard of care for an ERISA fiduciary and provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." Plaintiff further alleges that a prudent man would know that 29 U.S.C. § 1056(d)(3)(H) requires that "any money escrowed more than 18 months beyond the date on which first payment would be required to be made under state court order be provided to 'the person or persons who would have been entitled to such amounts if there had been no order.'" Compl., ¶ 33(a). Plaintiff also alleges that a prudent man would have known that the State contempt order is not a QDRO as that term is defined by § 1056(d)(3)(B).[4]   Indeed, ERISA

---

[4]    Section 1056(d)(3)(B) defines a qualified domestic relations order ("QDRO"), in relevant part, as follows:

provides that pension plan benefits may not be assigned unless such assignment is made pursuant to a QDRO.  29 U.S.C. § § 1056(d)(1), (d)(3)(A)-(B).  As described above, the gravamen of Counts I and II of Plaintiff's Complaint is that the State court's orders of March 25, 1983 and April 17, 1990 were not QDROs and that, therefore, Defendant assigned the escrowed funds and $464.51 monthly in violation of ERISA.

---

(B) For purposes of this paragraph--

(i) the term "qualified domestic relations order" means a domestic relations order--

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and

(II) with respect to which the requirements of subparagraphs (C) and (D) are met, and

(ii) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which--

(I) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and

(II) is made pursuant to a State domestic relations law (including a community property law).

(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies--

...

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

... .

Also, in Count II, Plaintiff alleges that Defendant breached its co-fiduciary duty under § 1105 because it failed to comply with § 1104(a)(1).[5] In particular, Plaintiff contends that Defendant's conduct as a co-fiduciary allowed TWA to breach its fiduciary duty and that if Defendant had performed its duties as a co-fiduciary it would have been aware that TWA's request to release the escrowed amount violated § 1056(d)(3) and that TWA's request to continue to send monthly payments to Lenna Angell was a breach of TWA's fiduciary duty.

Plaintiff claims that he did not have knowledge of Defendant's fiduciary breach until he received letters from Defendant in July through September 2005. In Union Pacific Railroad Co. v. Beckman Co., 138 F.3d 325, 330 (8th Cir. 1998), the court held that an ERISA plaintiff is held to have knowledge when he should have known that his cause of action accrued. Thus, if Plaintiff should have known of the breach on an earlier date "'through an exercise of reasonable diligence [] of the acts constituting the alleged violation,'" his action accrued at the time he should have had knowledge

---

[5] 29 U.S.C. § 1105 provides for liability of a co-fiduciary as follows:

(a) Circumstances giving rise to liability

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> **(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> **(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

9

of the fiduciary breach. Id. (quoting Alcorn v. Burlington N.R.R.Co., 878 F.2d 1105, 1108 (8th Cir.1989)). In regard to determining when Plaintiff acquired knowledge of all facts material to his claims, Plaintiff acknowledges in his Complaint that after the State court's Order and Judgment of Contempt of April 17, 1990, Defendant escrowed $462.51 each month from the benefits which Plaintiff received under the Plans. Additionally, Plaintiff acknowledges in his Complaint that Defendant sent the escrowed amount to Lenna Angell in 1991 and that beginning November 1, 1991, Defendant has sent $464.51 to Lenna Angell each month. Certainly, because the benefits which Plaintiff received each month were reduced by $462.51, Plaintiff had knowledge no later than November 1, 1991 that Defendant was withholding the amount ordered by the court as payable to Lenna Angell.[6]

Plaintiff further acknowledges in his Complaint that he knew in 1989 that Defendant was the payer of assets of both Plans as he states that in 1989 Defendant began providing him with monthly benefit payments and that the annuity which he received "was part of a group annuity contract and funding agreement between TWA and [Defendant]." Compl. ¶ 18. Plaintiff further acknowledges that in 1990 the State court found that the Amended Decree of 1983 was a QDRO; that the State court ordered that monthly payments to Lenna Angell should continue as long as Defendant is living; that the State court ordered that the amount she was to receive was 31.86% of Plaintiff's pension; and

---

[6] Plaintiff does not allege the specific date upon which Defendant began escrowing the $464.51 each month nor does he allege the specific date upon which Defendant released those funds to Lenna Angell. Plaintiff does allege that TWA requested that the funds be released on October 16, 1991 and that after release of the escrowed funds Defendant began paying Lenna Angell $464.51 each month as of November 1, 1991. Thus, according to Plaintiff's Complaint the date upon which Defendant commenced escrowing funds and the date upon which Defendant released the escrowed funds was some time after the State court's Order and Judgment of Contempt on April 17, 1990 and before November 1, 1991.

that this amount was $464.51. Compl. ¶¶ 20-21. Certainly, Plaintiff was privy to the State court Orders of 1983 and 1990.

Thus, pursuant to the allegations of his Complaint Plaintiff unequivocally had knowledge of Defendant's fiduciary status in 1989 when he began to receive his pension. He unequivocally had knowledge no later than November 1, 1991, that Defendant was withholding that portion of his pension which the State court ordered that Lenna Angell should receive each month. He unequivocally had knowledge in 1990 of the court's Order and Judgment of Contempt ordering that Lenna Angell receive monthly payments and that the State court held that the Order of March 25, 1983 was a QDRO. The 3-year statute of limitations is triggered by *knowledge of relevant facts* and *not by knowledge of the applicable law.* Gluck, 960 F.2d at 1177-78. As such, in regard to the allegations of Counts I and II of his Complaint, Plaintiff had knowledge of all material facts necessary to understand that a claim existed no later than November 1, 1991. Brown, 190 F.3d at 858. The 3-year statute of limitations, therefore, commenced to run in November 1991 and expired in November 1994.

B.     **Application of the 6-Year Statute of Limitations of § 1113(1)**:

Pursuant to §1113(1), the 6-year statutory period commences to run when the last action which constituted a part of the breach took place. According to the allegations of Plaintiff's Complaint, November 1, 1991, the date upon which Defendant commenced sending Lenna Angell $464.51 of Plaintiff's pension each month, would be *the last act necessary to establish a violation* of Defendant's alleged fiduciary duty. Thus, the 6-year statute of limitations of 29 U.S.C. §1113(1) commenced running no later than November 1, 1991. By this calculation Plaintiff should have filed his Complaint in the matter under consideration no later than November 1997. As such, the claim which is before this court is time-barred pursuant to § 1113(1) as well as pursuant to § 1113(2).

11

Plaintiff contends, however, that the last act that is part of Defendant's breach of fiduciary duty occurred on or about February 1, 2006. Doc. 8, ¶ 6. Plaintiff argues a "continuing violation" theory based on the premiss that Defendant's violations are reoccurring actions. However, such a theory has been expressly rejected. Phillips v. Alaska Hotel and Rest. Employees Pension Fund, 944 F.2d 509, 520 (9th Cir. 1991) ( rejecting application of a continuing violation exception to the statute of limitations established by 29 U.S.C. § 1113 and noting that "[o]nce a plaintiff knew of one breach, an awareness of the later breaches would impart nothing materially new"), cert. denied 504 U.S.911 (1992). The court in Phillips held that, "[w]hile the trustees' conduct may be viewed as a series of breaches, all were of the same character." Id. See also Pisciotta v. Teledyne Indus., Inc., 91 F.3d 1326, 1332 (9th Cir. 1996) (holding that the knowledge requirement of §1113(2) would be a nullity if an ongoing violation was recognized despite the fact that a plaintiff knew or had reason to know "of the injury which was the basis of the action"). Additionally, the Eighth Circuit rejected a claim of an ongoing breach of fiduciary duty based on the refusal to pay benefits in Adamson v. Armco, Inc., 44 F.3d 650, 653-54 (8th Cir. 1995). Clearly, in the matter under consideration, each time Defendant withheld funds from Plaintiff's monthly pension benefit and made a payment to Lenna Angell, Defendant was repeating an identical act. As such, the fact that Defendant made payments to Lenna Angell after 1997 does not renew the applicable statute of limitations.

**II.     Plaintiff's Claim for Recovery of Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B):**

In Count III of his Complaint Plaintiff alleges pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B) that Defendant owes him $86,398.86 plus interest for benefits owed to Plaintiff under the Plans which benefits Defendant wrongly assigned. Section 1132(a)(1)(B) provides a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

plan." Defendant contends that Missouri's 10-year statute of limitations is applicable to Count III and that, therefore, Count III is time-barred. Plaintiff contends that his Complaint is timely because his cause of action for Plan benefits did not accrue until there was a repudiation by the fiduciary, Defendant, and because Defendant's repudiation was no earlier than August 25, 2005.[7]

It is well established that because ERISA does not contain a statute of limitations applicable to actions brought for benefits, courts must refer to state law and apply the most analogous state statute of limitations. Cavegn v. Twin City Pipe Trades Pension Plan, 223 F.3d 827, 829 (8th Cir. 2000); Johnson v. State Mut. Life Assurance Co. of America, 942 F.2d 1260, 1262 (8th Cir. 1991). "[A] suit for ERISA benefits under § 1132(a)(1)(B) should be characterized as a contract action for statute of limitations purposes, unless a breach of the ERISA trustee's fiduciary duties is alleged." Id. at 1263. The Eighth Circuit holds, therefore, that the 10-year period of Mo. Rev. Stat. § 516.110 is the most analogous statute of limitations under Missouri law for a claim for ERISA benefits.[8] Id. at 1266.

The characterization of a plaintiff's claim for statute of limitations purposes, however, is a question of federal law. Id. Thus, "the question of claim accrual is controlled by federal law." Cavegn, 223 F.3d at 830 (citing Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir. 1998)). The parties agree that a cause of action for plan benefits under ERISA accrues "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." Union

---

[7] Although Defendant acknowledges it is not material to the court's consideration of its Motion to Dismiss, Defendant contends that the letters which Plaintiff sent to Defendant in 2005 were not claims for benefits because Defendant is not the Plan Administrator; TWA was the Plan Administrator and currently the Pension Benefit Guaranty Corporation is the Plan Administrator.

[8] Mo. Rev. Stat. § 516.110(1) provides that "[a]n action upon any writing, whether sealed or unsealed, for the payment of money" must be commenced within ten years.

13

Pacific, 138 F.3d at 330 (citations omitted). Plaintiff contends that the action accrued no earlier than August 25, 2005, when Defendant sent a letter to Plaintiff denying that it is a fiduciary and denying his request to cease all payments to Plaintiff's former wife. Defendant contends that the cause of action accrued in November 1991 when Plaintiff contends that Defendant wrongfully assigned his pension benefits. Defendant's position is supported by Union Pacific as that case holds:

> [A]n ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiar[y]." Miles v. New York State Teamsters Conf. Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir.1983) (quotations and citations omitted); see also Daill v. Sheet Metal Workers' Local 73 Pension Fund, 100 F.3d 62, 66 (7th Cir.1996) ("a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary," even if such repudiation occurs prior to the beneficiary's submission of a formal claim); Schroeder v. Phillips Petroleum Co., 970 F.2d 419, 420 (8th Cir.1992) (per curiam) (agreeing with district court that cause of action accrued in 1986, when beneficiaries were clearly aware that they would not receive benefits, despite fact that beneficiaries had not yet filed applications for benefits); Martin v. Construction Laborer's Pension Trust, 947 F.2d 1381, 1385 (9th Cir.1991) (cause of action accrues upon a "clear and continuing repudiation of [the beneficiary's] claim"); Cotter, 898 F.2d at 429 (absent a formal claim and a formal denial of the claim, a beneficiary's cause of action accrues at "the time at which some event other than a denial of a claim should have alerted [the beneficiary] to his entitlement to the benefits he did not receive").

138 F.3d at 330-31.

Plaintiff in the matter under consideration was clearly aware in November 1991 that Defendant was withholding $464.51 each month of benefits from the Plan which benefits were either held in escrow for or paid to Lenna Angell. While Plaintiff may not have made a formal claim for the withheld benefits until July or August of 2005, Defendant made a clear and unequivocal repudiation of Plaintiff's rights under the Plans in November 1991 and that repudiation was made known to Plaintiff as he certainly knew of the State court's April 17, 1990 Order and Judgment of Contempt and knew that his benefit check did not include the amount which the court found Lenna Angell

14

should receive for as long as she is living. Under such circumstances, for purposes of determining when Plaintiff's cause of action arose, federal law provides that it is not relevant that Plaintiff did not make a formal claim for the withheld benefits until 2005. What is relevant is that Defendant made a repudiation and that this repudiation unequivocally was made known to Plaintiff no later than November 1991. Union Pacific, 138 F.3d at 330-31. The court finds, therefore, that Plaintiff's cause of action pursuant to 29 U.S.C. § 1132(a)(1)(b) arose in November 1991 and that applying Missouri's 10-year statute of limitations, Plaintiff's cause of action filed in 2005 is untimely.

To the extent that Plaintiff argues that each month when Defendant made a payment to Lenna Angell it was engaging in a continuing violation of 29 U.S.C. § 1132(a)(1)(b), for the reasons found above in regard to Plaintiff's claims in Counts I and II, the court finds that Defendant's conduct was not a continuing breach. Missouri's 10-year statute of limitations, therefore, did not begin to run anew each month that Defendant failed to pay Plaintiff the full amount of his benefits under the Plans. Adamson, 44 F.3d at 653-54; Phillips, 944 F.2d at 520.

## CONCLUSION

For the reasons more fully set forth above the court finds that Plaintiff has failed to state a cause of action and that, therefore, his Complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; Doc. 6.

/s/ Mary Ann L. Medler

MARY ANN L. MEDLER
                                                UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of March, 2006.